FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.
★ MAR 04 2013 ★
BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
LEA BRUDER,

               Plaintiff,

v.

JEWISH BOARD OF FAMILY AND
CHILDREN'S SERVICES,

               Defendant.
-----------------------------------------------------------x

**MEMORANDUM & ORDER**
10-CV-5951 (MKB)

MARGO K. BRODIE, United States District Judge:

Plaintiff Lea Bruder, proceeding *pro se*, brings the above-captioned action against Defendant Jewish Board of Family and Children's Services ("JBFCS"), alleging discrimination and retaliation in violation of the Age Discrimination in Employment Act ("ADEA"). Defendant moved for summary judgment, and the Court heard argument on November 8, 2012. For the reasons set forth below, Defendant's motion for summary judgment is granted.

**I. Background**

Defendant is a non-profit agency that provides social services and mental health programs throughout the New York area. (Def. 56.1 ¶ 1.) Defendant operates the Boro Park Counseling Center in Brooklyn (the "Boro Park office"), which provides counseling to children and adults that are struggling with various emotional and social challenges. *Id.* at ¶ 3. Defendant hired Plaintiff as a social worker on January 1, 1999. (Compl. ¶ 8; Def. 56.1 ¶ 5.) Plaintiff was 52 when she was hired. (Def. 56.1 ¶ 5.) The terms and conditions of Plaintiff's employment were governed by a collective bargaining agreement between Defendant and Local 1707 of the Community and Social Agency Employees Union, AFL-CIO (the "Union"). *Id.* at ¶ 10. The "Management Rights" article of the collective bargaining agreement provides that the employer

has the exclusive right to assign duties to employees and that the employer "retains the right to determine the extent and scope of each job and to make and change work assignments." *Id.* at ¶ 11. At the start of Plaintiff's employment, she received a letter advising her that she was "assigned to the position of social worker" and that "JBFCS has the right of transfer to meet program or budgetary needs." *Id.* at ¶ 12. During her employment, Plaintiff received Defendant's "Rules and Regulations," which state that "[w]hen an employee is hired by the Agency and assigned to a particular position, it is understood that the employee's assignment is subject to change at the Agency's discretion." *Id.* at ¶ 13.

Plaintiff was assigned to work in the Assistance to Infants and Mothers ("AIM") program, which is run by Defendant. *Id.* at ¶ 6. The AIM program provides "preventative counseling services to expectant and post-partum mothers, primarily in the Orthodox and Chassidic Jewish Communities in Boro Park." *Id.* Plaintiff was responsible for assessing whether potential participants were qualified for the program, which included a stay in a respite home. *Id.* at ¶ 7. Plaintiff was supervised by managers in the Boro Park office, but she worked almost exclusively off site at Marimonides Hospital and the Seagate Respite Home. *Id.* at ¶ 8. Plaintiff claims that her supervisors were always extremely satisfied with her performance. (Compl. ¶ 8.) In 2005, Plaintiff requested and received a promotion to senior social worker. *Id.* at ¶ 14. Plaintiff was 58 years old at the time she was promoted. *Id.* Faye Wilbur, the director of the Boro Park office since 2005, supported and approved Plaintiff's promotion. *Id.* at ¶¶ 4, 14.

In 2009, Saravika Liberman became Plaintiff's direct supervisor. *Id.* at ¶ 9. Wilbur was still the director of the Boro Park office and Plaintiff's overall supervisor. *Id.* Plaintiff alleges that Liberman changed Plaintiff's reporting procedures, and, as a result, Plaintiff often had to work late. (Compl. ¶ 8.) Plaintiff also claims that she was denied access to New York City

funds, which she previously used for the AIM program. (Compl. ¶ 8.) On April 5, 2009, Plaintiff sent a letter to JBFCS Executive Vice President and Chief Executive Officer Paul Levine, requesting a formal review of the AIM program and raising her clients' concerns regarding co-pays and the expectation that AIM clients attend weekly therapy sessions. (Def. 56.1 ¶ 39; Declaration of Howard Z. Robbins ("Robbins Decl.") Ex. E.) Plaintiff complained that certain demands and actions of her supervisors had created a "toxic" work environment. (Robbins Decl. Ex. E.) Plaintiff did not complain of age discrimination. *Id.*

On August 20, 2009, Wilbur and Liberman informed Plaintiff that they intended to hire a second social worker for the AIM program. (Def. 56.1 ¶ 20.) Plaintiff was told that she would continue to work 35 hours per week but her hours in the AIM program would be reduced to 21 hours per week. *Id.* at ¶ 21. She would work the remaining 14 hours as a clinical social worker. *Id.* Plaintiff's job title and her pay would remain the same. *Id.* at ¶ 23. However, if Plaintiff preferred, she could simply work 21 hours per week in the AIM program. *Id.* at ¶ 24. This option would result in a reduction in pay. (Pl. Opp'n 1.) During Plaintiff's 21 hours in the AIM program, she would continue visiting Maimonides Hospital and Seagate Respite Home but she would also visit Methodist Hospital. (Def. 56.1 ¶ 25.) Wilbur told Plaintiff that the purpose of the change was "to improve and enhance the AIM program by expanding its scope (through Bruder's outreach)." *Id.* at ¶ 26. Wilbur also told Plaintiff that the change would ensure complete coverage when Plaintiff was absent on vacation or other leave. *Id.* at ¶ 27. Under the previous system, Defendant did not have a social worker at Maimonides Hospital or Seagate Respite Home, if Plaintiff was on vacation. *Id.* at ¶ 28. However, Plaintiff testified that in her 11 years as the only social worker for the AIM program there was never an issue with coverage. (Deposition of Lea Bruder ("Bruder Dep.") 43:24–44:7.) Wilbur and Liberman believed that this

change was in the best interest of the AIM program's clients, JBFCS and the community. (Def. 56.1 ¶ 30.) Plaintiff testified that she had no reason to doubt that Wilbur and Liberman "genuinely thought" that changing the structure of the AIM program would be beneficial, but she questioned the timing of the decision. (Bruder Dep. 45:20–46:10.)

On September 13, 2009, Plaintiff wrote to Levine again, complaining about the intended change to her work assignment. (Robbins Decl. Ex. F.) Plaintiff stated in the letter, "I would like to have the program maintain its original intent and status where I can continue to devote myself for the full 35 hours." *Id.* She did not raise any allegations of age discrimination. *Id.* Wilbur and Liberman met with Plaintiff on multiple occasions, including on September 11 and 14, 2009, to discuss the changes to Plaintiff's work assignment. (Def. 56.1 ¶ 43.) On each occasion, Plaintiff refused to accept the change and stated that she intended to continue to work 35 hours in the AIM program. *Id.* at ¶¶ 36–37, 43–44.

The New York City Department of Health and Hygiene approved Defendant's plan to have two social workers assigned to the AIM program in October of 2009. *Id.* at ¶ 32. On October 12, 2009, Defendant hired Chava Kadosh to work part time in the AIM program. *Id.* at ¶ 33. Kadosh was 26 years old at the time and reported to Liberman. *Id.* at ¶ 34. Plaintiff alleges that Kadosh was a young woman, who had just finished college, and did not have any experience or the necessary qualifications. (Compl. ¶ 8.) Plaintiff alleges that she was required to show Kadosh the ropes and that Kadosh would emotionally abuse Plaintiff by belittling and insulting her. *Id.* Even after Defendant hired Kadosh, Plaintiff refused to reduce her hours in the AIM program because she believed that her union would intercede on her behalf. (Def. 56.1 ¶ 45; Bruder Dep. 76:12–77:2.)

On October 26, 2009, Plaintiff received a written warning for "unprofessional behavior." (Robbins Decl. Ex. G.) In the warning, Wilbur stated that Plaintiff had acted unprofessionally on several occasions by responding flippantly to requests by Liberman and Wilbur for information regarding her time and her clients, writing a letter to the CEO regarding her displeasure in the modification of her duties, soliciting letters protesting her job change from individuals she worked with in the AIM program and complaining about the modification of her duties to the Department of Health auditor. *Id.* Wilbur stated that Plaintiff's actions were inappropriate, displayed a lack of judgment and jeopardized the program's funding. *Id.* Weber stated that Plaintiff must correct the behaviors discussed in the letter and direct any issues Plaintiff had with the administration of the AIM program to Wilbur or Liberman, not to representatives of regulatory bodies, clients or anyone else in the program. *Id.* Finally, Weber stated that if Plaintiff did not follow the directives cited in the memorandum, she would be subjected to further disciplinary action "up to and including termination of employment." *Id.*

On December 9, 2009, Plaintiff wrote a letter to Caryn Morgan, a union representative. (Pl. Opp'n Ex. B at 11.) In the letter, Plaintiff complained that "[a] new, younger social worker was just hired to replace 14 hours from my 35 hour schedule." *Id.* Plaintiff further stated, "I am expected to teach, guide and transfer over all my records, responsibilities and hard earned connections from the program that I established nearly 11 years ago to her." *Id.* On December 23, 2009, Plaintiff wrote a letter to Wilbur and Liberman informing them that "until I receive written directions from my union, I will not be making any changes in my work hours." (Robbins Decl. Ex. H.) The next day, Wilbur and Liberman met with Plaintiff. (Def. 56.1 ¶ 49.) Plaintiff again refused to accept the change in her assignment to 21 hours in the AIM program and 14 hours as a clinician. *Id.* Wilbur interpreted Plaintiff's refusal, as Plaintiff's acceptance of

the second option, where she would work only in the AIM program but would take a reduction in her hours. *Id.* at ¶ 50. Wilbur informed Plaintiff that, as of January 1, 2010, Plaintiff would only work 21 hours in the AIM program. *Id.* at ¶ 51. Plaintiff's salary was reduced from $51,133.99 to $35,680.39. (Pl. Opp'n 1.)

On January 6, 2010, Plaintiff submitted her resignation. (Def. 56.1 ¶ 54.) Plaintiff claims that she resigned because she could no longer take "the emotional abuse [she] was subjected to daily, the way [she] was mistreated and the tremendous stress [she] was under daily." (Compl. ¶ 8.) In her resignation letter, Plaintiff requested that she be permitted to work through February 3, 2010. (Def. 56.1 ¶ 55.) That request was granted. *Id.* Plaintiff continued to work 35 hours per week in the AIM program until she left Defendant, but she was only paid for the hours that she was authorized to work. *Id.* at ¶ 58. In March of 2010, Plaintiff filed a charge with the New York State Division of Human Rights or the New York City Commission on Human Rights and with the Equal Employment Opportunity Commission ("EEOC").[1] (Compl. ¶¶ 9–10.) Plaintiff received a right to sue letter on October 1, 2010. *Id.* at ¶ 12.

## II. Discussion

### a. Standard of Review

Summary judgment is proper only when, construing the evidence in the light most favorable to the non-movant, "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Redd v. N.Y. Div. of Parole*, 678 F.3d 166, 174 (2d Cir. 2012). The role of the court is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."

---

[1] The Complaint does not specify whether Plaintiff filed a charge with the New York State Division of Human Rights or the New York City Commission on Human Rights. (Compl. ¶ 9.)

*Cioffi v. Averill Park Cent. Sch. Dist. Bd. of Educ.*, 444 F.3d 158, 162 (2d Cir. 2006) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). A genuine issue of fact exists when there is sufficient "evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252. The "mere existence of a scintilla of evidence" is not sufficient to defeat summary judgment; "there must be evidence on which the jury could reasonably find for the plaintiff." *Id.* The court's function is to decide "whether, after resolving all ambiguities and drawing all inferences in favor of the non-moving party, a rational juror could find in favor of that party." *Pinto v. Allstate Ins. Co.*, 221 F.3d 394, 398 (2d Cir. 2000).

The Second Circuit has made clear that "an extra measure of caution is merited" when considering summary judgment in discrimination cases because "direct evidence of discriminatory intent is rare and such intent often must be inferred from circumstantial evidence found in affidavits and depositions." *Schiano v. Quality Payroll Sys.*, 445 F.3d 597, 603 (2d Cir. 2006) (citation omitted). In addition, the court "must construe the *pro se* plaintiff's claims liberally in deciding [a] motion for summary judgment." *Thompson v. Tom Vazquez Janitorial*, No. 05 Civ. 808, 2006 WL 3422664, at *2 (E.D.N.Y. Nov. 28, 2006) (citing *Sawyer v. Am. Fed'n of Gov't Employees, AFL-CIO*, 180 F.3d 31, 36 (2d Cir. 1999)); *see also Ferran v. Town of Nassau*, 471 F.3d 363, 369 (2d Cir. 2006) ("This Court will construe briefs submitted by *pro se* litigants liberally.").

### b. Discrimination

Plaintiff claims that Defendant discriminated against her on the basis of her age, when it reduced her hours in the AIM program. (Pl. Opp'n 1–2.) The Second Circuit has held that the *McDonnell Douglas* burden-shifting framework applies to claims brought under the ADEA. *Gorzynski v. Jet Blue Airways Corp.*, 596 F.3d 93, 106–07 (2d Cir. 2010); *see McDonnell*

*Douglas Corp. v. Green*, 411 U.S. 792 (1973). Under the *McDonnell Douglas* framework, the plaintiff bears the initial burden of establishing a prima facie case of discrimination. *Gorzynski*, 596 F.3d at 106. If the plaintiff establishes a prima facie case, the burden shifts to the defendant "to articulate 'some legitimate, nondiscriminatory reason' for its action." *Id.* (quoting *McDonnell Douglas*, 411 U.S. at 802). If the defendant sets forth a legitimate reason, the burden shifts back to the plaintiff to show that the proffered reason is a mere pretext and that the employer's decision was the result of discrimination. *Id.* The plaintiff must show that "age was the 'but-for' cause of the challenged adverse employment action." *Gross v. FBL Fin. Services, Inc.*, 557 U.S. 167, 180 (2009).

In the instant action, Plaintiff cannot establish a prima facie case of age discrimination, and, therefore her discrimination claim must be dismissed. In order to establish a prima facie case of age discrimination, a plaintiff must demonstrate "(1) that she was within the protected age group, (2) that she was qualified for the position, (3) that she experienced adverse employment action, and (4) that such action occurred under circumstances giving rise to an inference of discrimination." *Gorzynski*, 596 F.3d at 107. Plaintiff has failed to establish that she experienced an adverse employment action or any circumstances that give rise to an inference of discrimination.

The Second Circuit has defined "an adverse employment action as a 'materially adverse change' in the terms and conditions of employment." *Sanders v. N.Y.C. Human Res. Admin.*, 361 F.3d 749, 756 (2d Cir. 2004) (citation omitted). In order to be materially adverse, "a change in working conditions must be more disruptive than a mere inconvenience or an alteration of job responsibilities." *Williams v. R.H. Donnelley, Corp.*, 368 F.3d 123, 128 (2d Cir. 2004) (quoting *Galabya v. N.Y.C. Bd. of Educ.*, 202 F.3d 636, 640 (2d Cir. 2000)). Employment actions

sufficient to constitute an adverse employment action include "termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices . . . unique to a particular situation." *Sanders*, 361 F.3d at 755 (citing *Terry v. Ashcroft*, 336 F.3d 128, 138 (2d Cir. 2003)).

Plaintiff alleges that assigning her to work 14 of her 35 weekly hours outside the AIM program, as a clinical social worker, constituted a demotion.[2] (Bruder Dep. 32:3–14.) "[C]ourts have repeatedly held that a change in duties — even from a job that the plaintiff 'cherished' — does not constitute an adverse employment action." *Morrison v. Potter*, 363 F. Supp. 2d 586, 590 (S.D.N.Y. 2005) (collecting cases). Nevertheless, a change in duties or job reassignment may be an adverse employment action, "if it results in a change in responsibilities so significant as to constitute a setback to the plaintiff's career." *Galabya*, 202 F.3d at 641; *see also Velasquez v. Gates*, No. 08 Civ. 2215, 2011 WL 2181625, at *10 (E.D.N.Y. June 3, 2011) ("The fact that there is a change in the employee's job duties is not a sufficiently adverse change unless the change is so unsuited to plaintiff's skills as to constitute a setback to plaintiff's career." (citation and internal quotation marks omitted)). A plaintiff can make such a showing by demonstrating that the new assignment was "materially less prestigious, materially less suited to his skills and expertise, or materially less conducive to career advancement." *Galabaya*, 202 F.3d at 641.

Plaintiff does not dispute that her title and pay would have remained unchanged. (Bruder Dep. 32:19–33:6.) Nor does Plaintiff argue that she would no longer be functioning as a social

---

[2] Plaintiff cannot claim that her reduction in hours in January of 2010 was an adverse employment action. Plaintiff was given the option to continue working 35 hours a week, spending 14 hours as a clinical social worker, or continue working exclusively in the AIM program but for only 21 hours a week. Plaintiff chose to work only in the AIM program and, therefore, accepted the reduction in hours.

worker in the new assignment. Rather, Plaintiff claims that the reassignment was a demotion because she had been working in the AIM program for 11 years, and she did not "feel" that should have to change assignments. (Bruder Dep. 33:9–12.) She also stated that she was hired specifically to work in the AIM program. (Bruder Dep. 33:11–12.) Plaintiff argues that the AIM program was principally an advocacy program, as opposed to a clinical program; however, she does not explain the difference in her job responsibilities or the skills required. (Pl. Opp'n 1; Robbins Decl. Ex. E ("According to the contract with the OMH, [the AIM program] is an advocacy program, not a clinical one.").) Plaintiff claims that she was specifically trained as an expert in the advocacy issues dealt with by the AIM program, but she does not allege that she was less suited for clinical work or that clinical work was less prestigious. (Pl. Opp'n 1.)

Although Plaintiff would have preferred to remain in the AIM program full time, she has not demonstrated that the change in her duties constituted an adverse action. *See Carter v. New Venture Gear, Inc.*, 310 F. App'x 454, 457 (2d Cir. 2009) ("[The plaintiff] did not meet her burden of raising a genuine issue of material fact that her assignment to an admittedly equally paying and comparable job was materially less prestigious, 'materially less suited to her skills and expertise, or materially less conducive to career advancement.'" (alterations and citation omitted)); *Hernandez v. City of New York*, No. 11 Civ. 3521, 2013 WL 593450, at *3 (E.D.N.Y. Feb. 13, 2013) ("[T]he Court concludes that Plaintiff's allegations are the same 'alteration' of job responsibilities, rather than 'significantly diminished material' responsibilities, which the Second Circuit has declined to deem an adverse employment action." (citation omitted)). Plaintiff cannot establish that she suffered an adverse employment action.

Even if the Court were to assume that the change in Plaintiff's duties constitutes an adverse action, Plaintiff cannot establish circumstances that support an inference of age

discrimination. Plaintiff's only evidence of age discrimination is that Kadosh was only 26 years old when she was hired, and, according to Plaintiff, did not have any experience. (Compl. ¶ 8; Def. 56.1 ¶ 34.) As an initial matter, the Court notes that Kadosh did not replace Plaintiff. Kadosh was hired to work with Plaintiff. Even if the Court were to construe Kadosh as a replacement, her age is insufficient, without more, to establish an inference of age discrimination. *Fagan v. N.Y.S. Elec. & Gas Corp.*, 186 F.3d 127, 134 (2d Cir. 1999) ("The replacement of an older worker with a younger worker or workers does not itself prove unlawful discrimination."); *see also Pacenza v. IBM Corp.*, 363 F. App'x 128, 131 (2d Cir. 2010) ("The mere fact that Plaintiff's work duties were partially assumed by younger individuals following his termination was insufficient to survive summary judgment."); *Dieck v. Suffolk Cnty. Vanderbilt Museum*, No. 09 Civ. 2263, 2011 WL 4434066, at *5 (E.D.N.Y. Sept. 22, 2011) ("[A] replacement worker's age, without more, is insufficient to prove age discrimination."); *Peres v. Oceanside Union Free Sch. Dist.*, No. 05 Civ. 1807, 2008 WL 305342, at *12 (E.D.N.Y. Jan. 31, 2008) (holding that the "lone fact" that the plaintiff was replaced by a younger worker was insufficient to defeat summary judgment).

Moreover, Plaintiff was 52 years old when she was hired and 58 years old when she was promoted to senior social worker. (Def. 56.1 ¶¶ 5, 14.) Any inference of age animus is undermined because Plaintiff was well within the protected age group when she was hired and promoted. *See Baguer v. Spanish Broad. Sys., Inc.*, No. 04 Civ. 8393, 2010 WL 2813632, at *14 (S.D.N.Y. July 12, 2010), *aff'd*, 423 F. App'x 102 (2d Cir. 2011) ("Being in the protected class when hired undermines any inference of age discrimination."); *LaGrassa v. Autoone Ins. Co.*, No. 07 Civ. 1072, 2008 WL 3887606, at *8 (E.D.N.Y. Aug. 20, 2008) ("[T]he inference of discrimination is much weaker where plaintiff is well within the protected class when first

hired." (citation omitted)); *Peres v. Oceanside Union Free Sch. Dist.*, No. 05 Civ. 1807, 2008 WL 305342, at *11 (E.D.N.Y. Jan. 31, 2008) (noting the absence of any evidence of age animus where the plaintiff was "within the protected class (forty-seven years old) when she was first hired").

Additionally, Wilbur and Liberman were both 51 at the time that they altered Plaintiff's job assignment. (Def. 56.1 ¶ 35.) Courts have recognized that an allegation that a decision is motivated by age animus is weakened when the decisionmakers are members of the protected class. *See Mathews v. Huntington*, 499 F. Supp. 2d 258, 267 (E.D.N.Y. 2007) ("[A]lthough not dispositive, the fact that Stehly and Geiser — the decisionmakers with regard to plaintiff's firing — were forty-five and fifty-six years old, respectively, weakens any inference that the decision to fire plaintiff was based on his age."); *Baguer*, 2010 WL 2813632, at *15 (noting that the age of plaintiff's supervisors — 45, 49 and 61 — undercuts an inference of age discrimination). Plaintiff has not offered any evidence that could support an inference of age discrimination. Accordingly, the Court finds that Plaintiff has failed to establish a prima facie case of age discrimination.[3]

### c. Retaliation

Plaintiff also claims that Defendant retaliated against her because she "complained to higher authorities about unethical practices at the JBFCS." (Pl. Opp'n 1.) Retaliation claims

---

[3] To the extent that Plaintiff is bringing a claim under the ADEA for hostile work environment, that claim fails. In order to establish a hostile work environment claim, a plaintiff "must produce enough evidence to show that 'the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 102 (2d Cir. 2010) (citation omitted). Plaintiff has failed to present any evidence that supports an inference of age discrimination, and, therefore, Plaintiff cannot sustain a claim for hostile work environment. *See DeSalvo v. Volhard*, 312 F. App'x 394, 397 (2d Cir. 2009) (noting that the plaintiff had not shown any relationship between the alleged insults and the plaintiff's age).

under the ADEA are also analyzed under the *McDonnell Douglas* burden-shifting test. *Gorzynski*, 596 F.3d at 110. To establish a prima facie case of retaliation, the plaintiff must show "(1) that she participated in a protected activity, (2) that she suffered an adverse employment action, and (3) that there was a causal connection between her engaging in the protected activity and the adverse employment action." *Id.* Plaintiff has failed to establish a prima facie case of retaliation and, therefore, her claim must be dismissed.

The purpose of the anti-retaliation provision is "to forbid an employer from retaliating against an employee because of the latter's opposition to an unlawful employment practice." *Penberg v. HealthBridge Mgmt.*, 823 F. Supp. 2d 166, 191 (E.D.N.Y. 2011) (quoting *Manoharan v. Columbia Univ. Coll. of Physicians & Surgeons*, 842 F.2d 590, 593 (2d Cir. 1988)). "Practices made unlawful by the ADEA are employment decisions made 'because of [an] individual's age.'" *Groeneveld v. St. Charles Hosp. & Rehab. Ctr.*, No. 07 Civ. 4803, 2011 WL 2470055, at *4 (E.D.N.Y. June 17, 2011) (quoting 29 U.S.C. §§ 623(a)(1)–(2)). "To the extent that an employee complains about perceived 'unfair' treatment relating to job responsibility, hiring practices, or corporate policy, but fails to link the treatment to unlawful discrimination or to his protected status, he fails to establish that he was engaged in protected activity." *Penberg*, 823 F. Supp. 2d at 191 (collecting cases).

Plaintiff submitted one complaint before she was informed of the changes to her job assignment — a letter dated April 5, 2009.[4] (Robbins Decl. Ex. E.) In the letter, Plaintiff

---

[4] In the fall of 2009, Plaintiff complained formally and informally to her supervisors, people she worked with through the AIM program and the Department of Health auditors regarding the change in her job responsibilities. (Robbins Decl. Exs. F, G.) These complaints all occurred after Plaintiff had been notified of the change in her duties. In any event, these complaints do not contain any mention of discrimination on the basis of age and, therefore, do not constitute protected activity. *See Garrett v. Garden City Hotel, Inc.*, No. 05 Civ. 962, 2007 WL 1174891, at *20 n.18 (E.D.N.Y. Apr. 19, 2007) ("It is undisputed that plaintiff failed to

complained that Liberman and Wilbur had made "working conditions extremely difficult, unpleasant and unprofessional." *Id.* Specifically, Plaintiff complained that her supervisors had made changes to the AIM program, including the requirement that clients come to the Boro Park office, because the changes were placing unreasonable burdens on the clients. *Id.* Plaintiff stated that her supervisors were "accusing [her] of being resistant to this new policy and not promoting it enough to their satisfaction." *Id.* Plaintiff stated that she attempted to "be a 'salesperson' of this new policy" but had been met with complete opposition from clients to the programs. *Id.* As a result of this conflict, Plaintiff stated that there was an "air of hostility" at the office, and Plaintiff was "being degraded and insulted professionally on a regular basis." *Id.* Plaintiff wrote, in conclusion, that she was "requesting a formal review of this program, its goals, and [her] role in it." *Id.* Plaintiff also requested a change in her supervisors. *Id.* Although Plaintiff raises a number of concerns and complaints regarding her supervisors, Plaintiff does not make any allegations of age discrimination or tie the allegedly hostile treatment to age discrimination.

Plaintiff describes her complaint as a complaint about "unethical practices" and "unfair practice to management." (Pl. Opp'n 1.) At no point does Plaintiff claim, let alone offer any evidence, that she complained of practices prohibited by the ADEA.[5] Plaintiff has not offered any evidence that she complained of age discrimination and, therefore, has not established that

---

engage in activity protected by the ADEA; that is, plaintiff fails to allege or to argue that she related any of her complaints to age-based discrimination.").

[5] Plaintiff does offer a December 9, 2009 letter sent to her union, in which she complains about the hiring of a "new, younger social worker" to replace 14 hours of her work. (Pl. Opp'n Ex. B.) Even if this letter could be construed as complaining of age discrimination, Plaintiff sent the letter after the alleged adverse action had occurred. Moreover, the letter was sent to Plaintiff's union, and there is no evidence that Defendant had any knowledge of this letter.

she engaged in protected activity. *See Kearney v. ABN AMRO, Inc.*, 738 F. Supp. 2d 419, 431 (S.D.N.Y. 2010) (finding the plaintiff had not engaged in protected activity, even though she complained that her salary was insufficient, because she did not complain that she was being paid insufficiently because of her age or gender); *Garrett v. Garden City Hotel, Inc.*, No. 05 Civ. 962, 2007 WL 1174891, at *20 n.18 (E.D.N.Y. Apr. 19, 2007) (dismissing ADEA retaliation claim because "plaintiff fail[ed] to allege or to argue that she related any of her complaints to age-based discrimination"). Plaintiff has failed to establish that she engaged in any protected activity and, therefore, her retaliation claim must be dismissed.

### III. Conclusion

For the foregoing reasons, Defendant's motion for summary judgment is granted. The Complaint is dismissed in its entirety, and the Clerk of Court is directed to close this case.

SO ORDERED:

/S/ Judge Margo K. Brodie
MARGO K. BRODIE
United States District Judge

Dated: March 4, 2013
Brooklyn, New York